A. Clifford Edwards
Triel D. Culver
A. Christopher Edwards
John W. Edwards
Jackie S. Shields
EDWARDS & CULVER
1648 Poly Drive, Suite 206
Billings, Montana 59102
Telephone: (406) 256-8155
Email: nicole.carson@edwardslawfirm.org
Email: triel@edwardslawfirm.org
Email: chris@edwardslawfirm.org
Email: john.edwards@edwardslawfirm.org
Email: jackie@edwardslawfirm.org

*Attorneys for Plaintiff*

FILED
5/31/2024
Clerk, U.S. District Court
District of Montana
Billings Division

**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MONTANA
BILLINGS DIVISION**

| | |
|---|---|
| BILLINGS CLINIC,<br><br>Plaintiff,<br><br>vs.<br><br>ZURICH AMERICAN INSURANCE COMPANY, AMERICAN GUARANTEE AND LIABILITY INSURANCE COMPANY, and DOES 1-5,<br><br>Defendants. | Cause No. CV-24-60-BLG-SPW-TJC<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

COMES NOW Plaintiff, BILLINGS CLINIC, by and through its attorneys of record, Edwards & Culver, and for its Complaint against Defendants ZURICH

AMERICAN INSURANCE COMPANY, AMERICAN GUARANTEE AND LIABILITY INSURANCE COMPANY, and DOES 1-5, complains and alleges as follows:

## PARTIES

1. Plaintiff, BILLINGS CLINIC, was at all times relevant hereto a non-profit corporation, resident and citizen of the state of Montana, Yellowstone County, registered and authorized to do business in the state of Montana, Yellowstone County, with its principal place of business in the state of Montana, Yellowstone County.

2. Defendant, ZURICH AMERICAN INSURANCE COMPANY ("Zurich") was at all times relevant hereto, a New York Corporation, and is believed to be a resident and citizen of New York, with offices in Illinois, and is registered to do business as a Foreign Profit Corporation in the state of Montana. Zurich entered into and issued a contract of insurance in the state of Montana, insuring property located in the state of Montana, Yellowstone County.

3. Defendant, AMERICAN GUARANTEE AND LIABILITY INSURANCE COMPANY ("AGL") upon information and belief, is a wholly owned subsidiary of Zurich, and was at all times relevant hereto, an Illinois company and a citizen of Illinois, and entered into and issued a contract of insurance in the state of Montana, insuring property located in the state of Montana, Yellowstone

County.

4. The true names and capacities of DOES 1-5 are unknown to Plaintiff, who therefore sues said Defendants under these fictitious names. On information and belief, Defendant DOES 1-5, inclusive, (i) directly participated in or assisted in the performance of the wrongful acts and omissions described herein, although the full extent of their involvement is unknown at this time, OR (ii) conspired with the named parties in this case to perform the wrongful acts and omissions described below, although the full extent of their involvement is unknown at this time, OR (iii) acted as principals or agents, actual or ostensible, of other named parties in this case in performing the wrongful acts and omissions described below, although the full extent of their involvement is unknown at this time. Plaintiff thus believes that Defendant DOES 1-5, inclusive, are liable for the damages and other relief sought in this case as participants, co-conspirators, principals or agents, or are otherwise necessary or indispensable parties to adjudication of the issues involved in this case. When the true names and capacities of DOES 1-5, inclusive, have been ascertained, appropriate amendments of this Claim will be filed.

5. Plaintiff is further informed, believes and thereon alleges that at all times herein mentioned all Defendants, including DOES 1-5, inclusive, (i) jointly perpetrated the acts described herein with their Co-Defendants, (ii) were the successors in interest to, or agents, principals, partners, joint venturers, or co-

conspirators of their Co-Defendants in doing the things herein alleged and were acting within the scope and authority or in furtherance of a common scheme or design with the knowledge, permission, consent or ratification of their Co-Defendants in doing the things herein alleged, and, therefore, are liable, jointly and severally, for all damages and other relief or remedies sought by Plaintiff in this action.

## JURISDICTION AND VENUE

6. This Court has original jurisdiction in this matter pursuant to 28 U.S.C. §1332(a) because this is a civil action between Plaintiff, a citizen of the state of Montana, and Defendants, citizens of New York and Illinois, and the matter in controversy exceeds $75,000, exclusive of interest and costs.

7. Venue is proper in the Billings Division of this Court, because the acts and omissions giving rise to the causes of action alleged herein occurred in Billings, the contract between the parties was entered into and would be performed in Billings, and Plaintiff is a citizen of and has its principal place of business in Billings, Montana.

## FACTS

8. Billings Clinic is a non-profit corporation that provides healthcare services to the Montana community and operates a hospital and various healthcare clinics with numerous buildings and improvements within its service area.

COMPLAINT AND DEMAND FOR JURY TRIAL - 4

9. Billings Clinic purchased a policy of insurance through Zurich American Insurance Company called "The Zurich EDGE Healthcare Policy" ("the policy"), which is underwritten by American Guarantee and Liability Insurance Company (AGL) (hereinafter Defendants will be collectively referred to as "Zurich" or "Defendants") and assigned Policy Number ZMD0384773-02. The policy provided property damage coverage for Billings Clinic's interest in "buildings (or structures) including new construction, additions, alterations, and repairs that the Insured owns, occupies, leases or rents," as listed in a property schedule attached to the policy, when damaged by a covered cause of loss. The policy also provided coverage for personal property, improvements, professional fees and certain other coverage, as listed in the policy. Zurich had inspected the property in 2017 and knew the condition of the property listed in the schedule at the time it insured each of the properties. The properties and damages at issue in this Complaint are covered by the policy.

10. On or about August 11, 2019, a hailstorm, which was a covered cause of loss under the policy, caused extensive damage to multiple buildings and improvements listed in the Billings Clinic's schedule of insured properties.

11. Billings Clinic immediately notified Zurich of its losses and timely submitted its claim for coverage.

12. Zurich assigned claim number 5630039231 to the claim.

COMPLAINT AND DEMAND FOR JURY TRIAL - 5

13. On October 28, 2019, after conducting an inspection of the damaged properties with Billings Clinic representatives, Zurich's out-of-state adjustor, Ranger Technical Services from Richmond, Texas, submitted an estimate of repairs that included Replacement Cash Value (RCV) and Actual Cash Value (ACV) that were grossly under the scope and costs necessary for repair/replacement of Billings Clinic's damaged property.

14. Ranger Technical Services estimated RCV at $3,567,216.47 less $699,760.17 in depreciation for an ACV of $2,867,456.30.

15. Billings Clinic advised Zurich it disagreed with the scope and amount of the estimate.

16. Zurich paid the ACV as set forth in the estimate from Ranger Technical Services, less the deductible, in the amount of $2,842,456.30.

17. In order to provide information required by Defendants, Billings Clinic incurred the costs of hiring consultants, Cushing Terrell (CTA), to prepare a report of the scope of the damages caused by the 2019 hail event which was submitted to Zurich in June 2020.

18. Billings Clinic obtained estimates from various local contractors, which included bids for roofing, siding, skylights and windows, mechanical equipment and insulation, which were also submitted to Zurich.

19. Defendants then commenced a campaign to delay and prevent

additional payment of Billings Clinic's claims, repeatedly requesting information and implying damages were not covered due to alleged pre-existing damage from 2014 and 2016 hailstorms.

20. Zurich informed Billings Clinic that it must commence work on each of the covered buildings within two years of the date of loss, plus extensions given by Zurich. In reliance on this representation, Billings Clinic purchased materials and commenced work on each individual building within the two years, plus extensions of time provided by Zurich.

21. Billings Clinic timely complied with Defendants' multiple requests for information, including providing information about Billings Clinic's 2014 and 2016 hail claims.

22. Billings Clinic modified its insurance claim and proof of loss based on Defendants' misleading communications that created the impression coverage for many items of property damage was not available due to past hail claims, despite the fact that Defendants did not dispute that those items had sustained damage in the 2019 hailstorm.

23. Billings Clinic submitted a proof of loss for its claims and damages on the form provided by Zurich by May 5, 2022. Billings Clinic again included its estimates to repair the property, as well as invoices for some of the costs incurred as of that date.

24. After receiving Billings Clinic's May 5, 2022 proof of loss, Zurich again demanded another inspection of the properties. Billings Clinic complied and the inspection was conducted from June 28-30, 2022. After the inspection, Zurich again requested information on August 17, 2022. Billings Clinic responded to all requests for information by September 30, 2022. Zurich made no additional requests for information. Instead, Zurich advised it had received its reports back from its consultants and promised to respond to Billings Clinic's claim of loss.

25. In October 2022, James T. Parris, an executive general adjuster with Defendants, acknowledged receipt of all of Billings Clinic's responses to requests for information, advised he was awaiting further response from his consultants, and promised he would evaluate and handle the claim accordingly after receipt of that information.

26. At the beginning of December 2022, Billings Clinic was advised by an agent with Marsh McLennan, John Niedernhofer, that he had contacted the overall manager of property claims at Zurich, who said he would be meeting with Mr. Parris and would instruct him to provide a letter communicating Zurich's findings and position to Billings Clinic within the next two weeks.

27. Defendants did not respond as represented and Billings Clinic never receive a letter from Zurich.

28. Billings Clinic retained its current legal counsel and again contacted

Zurich and demanded Zurich's revised report or an explanation, citing policy provisions, as to why it was refusing to pay for items included with Billings Clinic's proof of loss and items for which it had received invoices. Billings Clinic specifically advised Zurich that among other things, Zurich had omitted consultant fees and certain siding and mechanical equipment from Zurich's original estimate and ACV payment, and, again, attached those invoices and estimates to their letter to Zurich.

29.     Although acknowledging receipt of Billings Clinic's demand, to date, Zurich has provided no revised report, no explanation for their denial of coverage, or any other substantive or explanatory response. Zurich has never denied receiving the CTA report with the scope of Billings Clinic's property damage, Billings Clinic's proof of loss dated May 5, 2022, Billings Clinic's local estimates for all repairs, and/or Billings Clinic's counsel's numerous requests for a response.

30.     To date, Defendants, and each of them, have failed to pay the value of damaged property, failed to pay the cost of repairing or replacing the damaged property, failed to reach an agreement on the value of any covered property, and failed to repair, rebuild or replace the property with property of like kind and quality.

31.     Defendants also failed to give timely notice of their intent in relation to the payment of losses after receiving Plaintiff's sworn statement of loss.

32.     Defendants also failed and continue to fail to provide an explanation

for their denial of coverage and/or failure to pay the amounts set forth in Billings Clinic's proof of loss.

33. Plaintiff relied upon Defendants' actions and representations, including, without limitation, Defendants' estimate and statement that Plaintiff was required to commence repairs on each and every building within two years, which led Plaintiffs to believe Defendants had elected to pay the cost to repair or replace the damaged property. Plaintiff incurred fees and costs related to inspections, reports, purchases of materials, and repairs to their property based upon Defendants' acts, omissions, and representations.

34. Defendants failed to pay the value of Plaintiff's damaged covered property, as set forth in Plaintiff's scope of damages provided to Zurich and/or as described in Plaintiff's proof of loss, failed to pay the Replacement Cash Value (RCV) for items for which it has received invoices, failed to pay professional fees for which it received invoices, and failed to establish a reasonable RCV to enable Billings Clinic to complete repairs and replacement of its damaged property.

35. The RCV established by Defendants is less than half the actual cost for Billings Clinic's repair or replacement of its covered property.

36. Billings Clinic has paid large insurance premiums to Defendants for insurance coverage to be certain it could repair or replace its property in the event of a covered loss and be reimbursed for its expenses related to that covered loss, so it

could continue to provide healthcare services to the community.

37. As a result of Defendants' acts and omissions, Billings Clinic has been unable to complete repairs to its damaged buildings and improvements and has had to pay for professional fees and other expenses that should have been covered under its policy of insurance. Billings Clinic has suffered damages and will continue to suffer damages as a result of Defendants' failure to provide the coverage to which Billings Clinic is entitled under the insurance policy and the law against unfair claims practices.

38. Defendants have acted with malice and had knowledge of facts or intentionally disregarded facts that created a high probability of injury to the Plaintiff and deliberately proceeded to act in conscious or intentional disregard of and/or with indifference to the high probability of injury to the Plaintiff.

## COUNT I
## BREACH OF CONTRACT

39. Plaintiff re-alleges and incorporates by reference the allegations of the preceding paragraphs as if fully set forth herein.

40. On the date of the August 11, 2019 hail storm, Defendants and Billings Clinic had a valid and enforceable contract of insurance (the "policy") that included coverage up to the limits of the policy for the cost to repair or replace damaged property, debris removal, land improvements, increased costs of construction, miscellaneous unnamed locations, newly acquired property, new construction or

additions, professional fees, and protection and preservation of property, among other things.

41. Prior to the 2019 hail storm, Billings Clinic had paid Defendants hundreds of thousands of dollars in premiums for the insurance coverage set forth in the policy.

42. Billings Clinic has complied with the requirements of the policy and performed its obligations under the policy.

43. Billings Clinic submitted sufficient proof of loss of its claims to Defendants and requested payment as set forth in its proof of loss form required by Defendants.

44. Defendants accepted coverage under the policy for the August 11, 2019 hail storm.

45. Defendants have not notified Billings Clinic of any failure to perform any obligation under the policy.

46. Every contract has an implied covenant of good faith and fair dealing which requires honesty in fact and the observance of reasonable commercial standards of fair dealing in the trade.

47. Defendants were not honest in fact with Billings Clinic and failed to observe reasonable commercial standards of fair dealing in the trade.

48. Defendants failed to act in good faith and breached the implied

covenant of good faith and fair dealing with regard to Billings Clinic's claims under the contract.

49. Defendants wrongfully breached their duties owed to Billings Clinic under the policy and failed to provide Billings Clinic with the benefits to which it was entitled under the policy.

50. After Billings Clinic's "Covered Property" was damaged by a "Covered Cause of Loss," Defendants failed to timely pay Billings Clinic the value of the property, the cost to repair or replace the damaged property, did not establish an agreed valuation for the property, and did not repair, rebuild or replace the property with other property of like kind and quality, as set forth in Billings Clinic's proof of loss. Defendants also failed to pay for all debris removal, professional fees, and other costs and expenses related to Billings Clinic's claim, as set forth in its proof of loss.

51. Defendants failed to adjust the claim on an actual Replacement Cost basis.

52. Defendants failed to give notice of their intentions with regard to all of the property that was damaged within thirty (30) days after receiving the sworn statement of loss from Billings Clinic.

53. Defendants failed to properly value and pay Billings Clinic's claims.

54. As a result of Defendants' breach of contract and their delay in and

failure to provide Billings Clinic its benefits under the policy, Billings Clinic has been unable to timely repair or replace its property damaged by the 2019 hail storm, has incurred costs, professional fees and other expenses related to its insurance claim, and has otherwise been deprived of the contractual benefits to which it is entitled. As a result of Defendants' breach of contract, Billings Clinic will also have to pay increased costs for supplies, materials, labor and other expenses in order to complete the repairs and replacement of its covered property damaged by the 2019 hailstorm.

55. As a direct and proximate result of Defendants' breach of contract, Plaintiff has been damaged in an amount to be determined at trial and is entitled to all damages provided under Montana law, including, without limitation, compensatory damages, pre and post judgment interest, attorneys' fees and expenses which are ongoing.

## COUNT II
### VIOLATION OF MONTANA FAIR CLAIMS PRACTICES ACT
### (STATUTORY BAD FAITH)

56. Plaintiff re-alleges and incorporates by reference the allegations of the preceding paragraphs as if fully set forth herein.

57. Defendants, as insurers, owed duties to Plaintiff Billings Clinic as set forth by statute in Montana's Unfair Trade Practices Act (UTPA), § 33-18-101, *et*

*seq.,* MCA, which govern the conduct and activities of insurance companies in the state of Montana.

58.     Defendants violated § 33-18-201(1), (4), (5), (6), and (13), MCA. Pursuant to § 33-18-242, Plaintiff has as independent cause of action against Defendants for actual damages caused by Defendants' violations.

59.     Defendants misrepresented that if Plaintiff paid the required premiums, Defendants would timely provide the coverages and benefits set forth in the policy of insurance.

60.     Defendants misrepresented that Plaintiff's prior hail claims from 2014 and 2016 precluded Plaintiff from obtaining coverage for property damaged in 2019.

61.     Defendants misrepresented that Plaintiff had to begin work on each separate building within 2 years, plus Defendants' extensions of that time, in order to obtain the coverage and benefits purchased by Plaintiff.

62.     Defendants did not deny Plaintiff's request for payment of Plaintiff's professional fees, including CTA's and Empire's inspection and consultant fees incurred to determine the scope of damages and to respond to Defendants' requests for additional information, and implied that Defendants would pay those fees. Defendants knew Plaintiff was relying on Defendants acceptance of those fee requests and believed the CTA and Empire fees would be paid.  Plaintiff continued

to incur such fees based on that belief, but Defendants have still not paid Plaintiff for its professional fees.

63. Defendants misrepresented that they would provide reports and information regarding Plaintiff's proof of loss.

64. Defendants misrepresented the value of Plaintiff's 2019 claim and the cost to repair or replace the damaged property.

65. Defendants misrepresented pertinent facts and insurance policy provisions relating to coverages and benefits at issue.

66. Defendants knew each of its misrepresentations were false when made and made the misrepresentations to Plaintiff intending for Plaintiff to rely on the misrepresentations.

67. Billings Clinic relied on the misrepresentations made by Defendants when it paid premiums for the policy of insurance, incurred costs and expenses related to the 2019 hailstorm, commenced repairs, purchased materials for each of its buildings, reduced its claim, and waited for Defendants to reply to its proof of loss.

68. Defendants refused to pay claims without conducting a reasonable investigation based upon all available information, failed to affirm or deny coverage of claims within a reasonable time after proof of loss statements had been completed,

and neglected to attempt in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear.

69. Defendants knew or should have known the proper scope and value of Plaintiff's claim, and knew or should have known Plaintiff's coverage should not be reduced by any alleged pre-existing damage from the 2014 and 2016 hail claims, because Defendants had inspected and valued Billings Clinic's property in 2017 and Defendants had received all information requested by them regarding the scope of Billings Clinic's damages from the 2019 hailstorm, the cost to repair and replace damaged property, and the prior 2014 and 2016 hail claims.

70. Defendants knew or should have known the proper scope and value of Plaintiff's claim, because Billings Clinic provided Defendants with estimates and bids from local contractors willing to repair the damage to Billings Clinic's property. Defendants did not obtain estimates from any local contractors willing to repair the Billings Clinic property, and simply hired an out of state adjuster to provide the lowest possible repair estimate using artificial numbers that did not reflect what local companies would actually charge for a job of this size and nature.

71. Defendants did not confirm or make any effort to confirm whether there were local contractors who would complete the repair of the Billings Clinic's damages caused by the 2019 hailstorm for the amount referenced in the insurance estimate it procured.

72.     Defendants failed to affirm or deny coverage for Billings Clinic's damages caused by the 2019 hailstorm, as reflected in the scope of damages in the CTA report received by Defendants.

73.     Defendants repeatedly asked for information that was already in its possession, used stall tactics to avoid payment of claims, and ultimately ignored communicating with its insured altogether.

74.     Defendants failed to promptly settle claims, even though liability was clear, under one portion of the insurance policy coverage in order to influence settlements under other portions of the insurance policy coverage.

75.     Defendants paid the alleged ACV, as set forth in the estimate from Ranger Technical services, less the deductible in an effort to dissuade Billings Clinic from pursuing any additional claims under the policy.

76.     Defendants are wrongfully capitalizing and profiting on their failure to pay fair value or make fair Replacement Cash Value (RCV) and ACV estimates for covered property, failure to communicate or negotiate in good faith, and failure to pay amounts owed Plaintiff under the policy.  Defendants knew their estimate was artificially low.  It is estimated that Defendants are accruing in excess of $1,000/day in profits due to its unfair claims practices and breach of its obligations under the policy of insurance.

77. As a direct and proximate result of the acts and/or omissions of Defendants, Plaintiff suffered injury and damage and will continue to suffer injury and damage in the future, including, without limitation, the inability to promptly repair or replace its covered property and related damages, unreimbursed costs, fees and expenses incurred in relation to its claims under the policy, interest on those amounts owed to Plaintiff under the policy, and increased costs of materials and labor.

78. As a direct and proximate result of the acts and/or omissions of Defendants, and each of them, Plaintiff is entitled to all damages that are or may be recoverable under Montana law and/or equity, including, without limitation, disgorgement of profits, pre and post judgment interest, attorneys' fees and expenses which are ongoing.

79. Defendants' actions constitute actual malice, in that the Defendants had knowledge of facts or intentionally disregarded facts that created a high probability of injury to the Plaintiff and deliberately proceeded to act in conscious or intentional disregard of and/or with indifference to the high probability of injury to the Plaintiff.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Billings Clinic prays for judgment against Defendants for all damages and costs to which it is entitled under Montana law, to include compensatory damages, consequential damages, equitable

damages/disgorgement of profits, prejudgment interest, post-judgment interest, and attorney fees, in such categories and in such amounts as will be furnished to Defendants in accordance with applicable Montana law and/or applicable Rules of Civil Procedure, and as are just and proper under the circumstances presented at trial.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury of all of the issues in this action.

DATED this 29th day of May, 2024.

EDWARDS & CULVER

By  /s/ John W. Edwards
    A. Clifford Edwards
    Triel D. Culver
    A. Christopher Edwards
    John W. Edwards
    Jackie S. Shields
    Attorneys for Plaintiffs