IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| BILLINGS CLINIC, | CV-24-60-BLG-SPW |
| Plaintiff, | |
| vs. | ORDER |
| ZURICH AMERICAN INSURANCE COMPANY, AMERICAN GUARANTEE AND LIABILITY INSURANCE COMPANY, and DOES 1-5 | |
| Defendants. | |

Before the Court is a Motion to Dismiss filed by Defendant Zurich American Insurance Company ("Zurich"). (Doc. 11). Zurich contends that it has been improperly named as a defendant and Plaintiff, Billings Clinic, has failed to state a claim against it upon which relief can be granted. (Doc. 12). The motion is fully briefed and ripe for the Court's review. (*See* Docs. 12, 17, 20).

At Billings Clinic's request, the Court held a hearing on November 5, 2024, during which both parties presented oral argument as to Zurich's Motion. (*See* Docs. 23, 12).

For the following reasons, the Court denies Zurich's Motion.

1

## I.    Background

When considering a motion to dismiss under Federal Rule of Civil

Procedure 12(b)(6), a court must accept all material allegations in the complaint as

true. *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). The

following facts are taken from Billings Clinic's Complaint.[1]

Billings Clinic is a non-profit corporation that operates a hospital and

various healthcare clinics servicing the Montana community. (Doc. 1 at 4). In

2019, Billings Clinic purchased an insurance policy ("Policy") through Zurich and

"underwritten by American Guarantee and Liability Insurance Company

["AGLIC"]." (*Id.*). On August 11, 2019, a hailstorm damaged multiple buildings

and improvements owned by Billings Clinic. (*Id.* at 5). The Policy provided

coverage for the property and other improvement fees incurred due to the loss and

damage caused by the hailstorm. (*Id.*).

On October 28, 2019, one of the Defendants' out-of-state adjustors

submitted a replacement and repair estimate totaling $3,567,216.47 in replacement

cash value. (*Id.* at 6). After calculating for depreciation, the adjustor estimated an

actual cash value of $2,867,456.30. (*Id.*). The Defendants paid the actual cash

---

[1] Throughout the Complaint, Billings Clinic refers to Defendants collectively as "Zurich" or
"Defendants." (Doc. 1 at 5–20 ("hereinafter Defendants will be collectively referred to as
"Zurich" or "Defendants.")). In this Order, the Court refers to Zurich American Insurance
Company as "Zurich," American Guarantee and Liability Insurance Company as "AGLIC," and
all Defendants as "Defendants."

value, less the deductible, to Billings Clinic in the amount of $2,842,456.30. (*Id.*).

Billings Clinic disagreed with the estimate's scope and monetary value and advised

the Defendants of its disagreement. (*Id.*).

Upon the Defendants' request, Billings Clinic issued a report detailing the

scope of damages, contractor estimates and bids, and other information related to

Billings Clinic's 2014 and 2016 hailstorm claims. (*Id.* at 6–7). The Defendants

required Billings Clinic to begin work on the damaged buildings within two years

from the date of loss. (*Id.* at 7). Consequently, Billings Clinic purchased materials

and initiated repairs on the damaged buildings. (*Id.*).

On May 5, 2022, Billings Clinic submitted its proof of loss claim, including

repair estimates and invoices for costs incurred. (*Id.*). After receiving the proof of

loss, the Defendants requested an additional inspection, which was conducted

between June 29 and June 30, 2022. (*Id.* at 8). In October 2022, James Parris, an

executive general adjustor with Defendants, acknowledged receipt of Billings

Clinic's proof of loss and various responses to Defendants' requests. (*Id.*). Mr.

Parris advised Billings Clinic that he was awaiting "further response from his

consultants" and "promised he would evaluate and handle the claim accordingly

after receipt of that information." (*Id.*).

As of the Complaint's filing date, Billings Clinic alleges that the Defendants

have failed to explain why they refused to pay for items included with Billings

Clinic's proof of loss. (*Id.* at 9). Further, Billings Clinic alleges that Defendants have: (1) failed to pay the value of the damaged property; (2) failed to pay repair or replacement costs of the damaged property; (3) failed to reach an agreement on the value of the covered property; and (4) failed to repair, rebuild, or replace damaged property with property of like kind and quality. (*Id.*).

Based on the foregoing, Billings Clinic alleges two counts against the Defendants. First, Billings Clinic pleads breach of contract. (*Id.* at 12). Specifically, that the Defendants breached covenants of good faith and fair dealing regarding Billings Clinic's claims under the Policy. (*Id.* at 12–13). Second, Billings Clinic pleads statutory bad faith under Montana Code Annotated §§ 33-18-101, et seq., also known as Montana's Unfair Trade Practices Act ("UTPA"). (*Id.* at 14–19).

## II.    Legal Standard

A Rule 12(b)(6) motion tests the legal sufficiency of a pleading. *Navarro v. Block*, 250 F.3d 729, 739 (9th Cir. 2001). To survive a 12(b)(6) motion, the complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible if the complaint alleges enough facts to draw a reasonable inference that the accused

4

is liable. *Id.* Though the complaint does not need to provide detailed factual allegations, it cannot merely assert legal conclusions. *Twombly*, 550 U.S. at 555.

When ruling on a 12(b)(6) motion, a court must accept the complaint's well-pled factual allegations as true and construe them in the light most favorable to the non-movant. *Usher*, 828 F.2d at 561. Dismissal "is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).

## III.   Analysis

In its Complaint, Billings Clinic alleges that the Defendants, as parties to and insurers of the Policy, breached the contract and acted in bad faith. Specifically, Billings Clinic alleges that Defendants are in breach of contract for failing to properly value and pay Billings Clinic's claims. (Doc. 1 at 13–14). Further, Billings Clinic alleges that the Defendants: (1) misrepresented pertinent facts related to coverage; (2) refused to pay claims without conducting a reasonable investigation; (3) failed to affirm or deny coverage of claims after completing proof of loss statements; (4) neglected to effectuate prompt, fair, and equitable settlements of claims; and (5) failed to promptly settle claims. (*Id.* at 14–19).

In response, AGLIC answered the Complaint while Zurich filed this Motion arguing that it was neither a party to nor the insurer of the Policy. To support this Motion, Zurich filed the Policy, the temporary binder of insurance ("Binder"), and affidavits from Mr. Parris to prove that it is not the proper party in this suit. Provided this extrinsic material, the Court will first address whether it will consider the documents filed by Zurich under Rule 12(b)(6). Then, it will address the merits of Zurich's Motion.

### A.   *Whether the Court will Consider Documents Outside the Pleadings*

Zurich filed two exhibits with its briefing to support its arguments regarding this Motion. Consequently, before the Court can reach a conclusion on Zurich's Motion, it must first determine whether the documents presented outside the pleadings may be considered.

In its first exhibit, Zurich filed an affidavit from Mr. Parris, duplicate copies of the Policy, and the Binder. (Doc. 12-1). Zurich argues that the Policy shows that Billings Clinic and AGLIC are the contracting parties, not Zurich. (Doc. 12 at 5–9). Thus, Zurich concludes that it cannot be sued for breach of contract. Further, Zurich argues that the Policy shows that AGLIC is the insurer, not Zurich. (Doc. 12 at 6). Thus, Zurich concludes that it cannot be held statutorily liable under Montana's UTPA because only an insurer may be held statutorily liable. (*Id.*).

6

In opposition to Zurich's Motion, Billings Clinic argues that a question of fact exists as to whether Zurich is a contracting party or an insurer. Without resolution of this fact, Billings Clinic contends that a motion to dismiss is improper. To support its argument, Billings Clinic noted numerous pages in the Policy and the Binder to show Zurich's identification as a contracting party and insurer. Zurich's name appears throughout the Binder as "Zurich, Company, us, we, our, Insurer." (Doc. 17 at 4–7 (citing Doc 12-1 at 347, 351, 352, 359, 382, 386)). Further, Zurich's copyright is printed on the Policy's pages, and the Policy directs Billings Clinic to Zurich if it needs "additional information or assistance in resolving a complaint about its insurance." (Doc. 17 at 6 (citing Doc. 12-1 at 6–9)).

In reply, Zurich filed a second exhibit with an amended affidavit from Mr. Parris and one copy of the Policy previously submitted in its first exhibit. (Doc. 20-1). Mr. Parris's amended affidavit stated that the duplicate Polices, and the Binder included with the first exhibit were submitted in error. (*Id.* at 2). Mr. Parris further stated that the Policy superseded the Binder when it was issued on July 1, 2019. (*Id.*). Thus, Zurich argues that under Montana law, the Binder did not have legal effect at the time of the hailstorm. (Doc. 20 at 4 citing (Mont. Code Ann. § 33-15-411 (2023))). Zurich points out that Billings Clinic, in its response, incorrectly relied on the Binder to prove Zurich's involvement. (*Id.* at 3–4).

7

Because the Binder did not control, Zurich maintains that it is neither a party to nor insurer of the Policy.

At the hearing, Billings Clinic refuted Mr. Parris's statement that the Policy was issued on July 1, 2019. (*See* Doc. 20-1 at 2; Doc. 20-1 at 7). Rather, counsel alleged that the Binder was in effect at the time of the hailstorm because the Policy was not issued until September 2019. The Policy and the Binder indicate a July 1, 2019, effective date, but no date of issuance is provided in the Policy or the Binder. (Doc. 12-1 at 6; Doc. 20-1 at 7). Thus, if the Binder were in effect at the time of the hailstorm, Billings Clinic argues that Zurich should be held liable as evidenced by its identification as the insurer.

In general, a district court may not consider material outside the pleadings when assessing the sufficiency of a complaint under Rule 12(b)(6). *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). If "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). However, in certain circumstances a court may consider extrinsic evidence without converting a Rule 12(b)(6) motion into a motion for summary judgment. *Lee*, 250 F.3d at 448. A court may consider extrinsic evidence on which the complaint "necessarily relies" if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the document's authenticity. *Marder*

8

*v. Lopez*, 430 F.3d 445, 448 (9th Cir. 2006); *see also United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) ("Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim.")

If the court incorporates a document by reference, any inferences drawn from the document by the court should be approached with caution. *Khoja*, 899 F.3d at 1003. The "incorporation-by-reference doctrine is designed to prevent artful pleading by plaintiffs," but it "is not a tool for defendants to short-circuit the resolution of a well-pleaded complaint." *Id.* Though a court may assume an incorporated document's contents are true, "it is improper to assume the truth of an incorporated document if such assumptions only serve to dispute facts stated in a well-pleaded complaint." *Khoja*, 899 F.3d at 1003; *see In Re Tracht Gut, LLC*, 836 F.3d 1146, 1150 (9th Cir. 2013) ("At the motion to dismiss phase, the trial court must accept as true all facts alleged in the complaint and draw all reasonable inferences in favor of the plaintiff."); *see also Sgro v. Danone Waters of N. Am., Inc.*, 532 F.3d 940, 942, n.1 (9th Cir. 2008) (finding it proper to consider disability benefits plan referenced in complaint, but declining to accept truth of the plan's contents where the parties disputed whether defendant actually implemented the plan according to its terms).

9

Here, the Court declines to consider Mr. Parris's affidavits under the incorporation-by-reference doctrine because the affidavits are not referenced in the Complaint and are not central to Billings Clinic's claims. Accordingly, the Court may not consider the affidavits in deciding the motion under Rule 12(b)(6).

However, the Court finds that Billings Clinic's Complaint necessarily relies on the Policy and the Binder. First, Billings Clinic states in its Complaint that it was assigned policy number ZMD0384773-02, which is the number referenced in the Policy and the Binder. (Doc. 12-1 at 6, 347; Doc 20-1 at 7). Second, the Policy and the Binder are central to Billings Clinic's claims. An insurance policy is "the written contract of or written agreement for or effecting insurance . . . and includes all clauses, riders, endorsements, and papers." Mont. Code Ann. § 33-15-102. A binder is a contract for temporary insurance and is "deemed to include all the usual terms of the policy as to which the binder was given." § 33-15-411(1). Finally, no party disputes the authenticity of the documents. Thus, it is proper for the Court to infer that the contents of the document are true.

However, the Court proceeds with caution provided the parties' disagreement about the Policy issuance date. Accordingly, for the purposes of the 12(b)(6) motion, the Court will not assume the Policy's issuance date as true because it is neither stated in the Complaint nor referenced in the Policy or the Binder.

Having incorporated extrinsic materials, the Court nevertheless has discretion to consider these materials by converting this motion to a motion for summary judgment. *Hicks v. PGA Tour, Inc.*, 897 F.3d 1109, 1117 (9th Cir. 2018). The Court declines to do so here and will continue its analysis under Rule 12(b)(6). Federal Rule of Civil Procedure 56 and Local Rule 56 provide a procedure for submitting motions for summary judgment, for which Zurich is free to file.

In sum, the Court will not consider Mr. Parris's affidavit and will look to the face of Billings Clinic's Complaint, supplemented by the Policy and the Binder. The Court now moves on to the merits of Zurich's Motion.

B.   *Whether Billings Clinic's Complaint Fails to State a Claim*

1.   *Breach of Contract Claim*

Zurich's central arguments focus on the text of the Policy to dispute the claim that it issued the Policy to Billings Clinic. At the hearing, Zurich's counsel bolstered its argument by explaining that only one insurer would have issued the Policy, and the insurer was AGLIC, not Zurich.

Under Montana law, a contract must contain "identifiable parties capable of contracting." Mont. Code Ann. § 28-2-102(1). An insurance policy and a binder are contracts. § 33-15-102 (The insurance policy is "the written contract of or written agreement for or effecting insurance . . . and includes all clauses, riders, endorsements, and papers."); § 33-15-411(1) (A binder is a contract for temporary

11

insurance and is "deemed to include all the usual terms of the policy as to which the binder was given."). A binder's temporary term expires when the policy for which the binder applies is issued. § 33-15-411(2) ("No binder shall be valid beyond the issuance of the policy with respect to which it was given or beyond 90 days from its effective date, whichever is shorter."); *Watts v. Westland Farm Mut. Ins. Co.*, 271 Mont. 256, 260, 895 P.2d 626, 628 (1995).

Here, Billings Clinic alleges that Zurich and AGLIC issued the Policy to Billings Clinic. (Doc. 1 at 2). Assuming the Complaint's factual allegations, the Policy's contents, and the Binder's contents are true, then Zurich is the "Company" and "Insurer" in the Binder whereas "[i]nsurance is provided by" AGLIC in the Policy. (Doc. 12-1 at 352; Doc. 20-1 at 16 (AGLIC "referred to as the 'Company.'")). Thus, without knowing when the Policy was issued, the Court must assume that Zurich and AGLIC were parties to the contract as alleged by Billings Clinic.

Though the Policy would control after the Binder's term expired as matter of law, Billings Clinic argues that the Binder was in effect at the time of the hailstorm because the Policy had not been issued. The Policy and the Binder identify an effective date of July 1, 2019. (Doc. 12-1 at 349; Doc. 20-1 at 6). However, the Policy's issuance date remains to be determined and was not alleged in the Complaint. Under Montana law, the Binder would be valid for the shorter of 90

12

days from the effective date or the date of issuance. However, the Court cannot determine when the Binder's term expired because the issuance date remains a question of fact.

Even without the issuance date, Billings Clinic demonstrates that Zurich might have been a party and insurer to the Policy as evidenced by: (1) multiple signatory lines either unsigned or unidentified; (2) language in the Policy directing Billings Clinic to Zurich if it needs "additional information or assistance in resolving a complaint about its insurance;" (2) Zurich employees working on and adjusting claims; and (4) the allegation that Zurich issued the proof of loss form. (Doc. 12-1 at 6–9; Doc. 20-1 at 10, 23, 174; Doc. 1 at 6–8).

Billings Clinic suggests that without more extrinsic evidence, a motion to dismiss is improper at this time. The Court agrees. Consequently, as Billings Clinic has pled that it contracted with AGLIC and Zurich and because the Policy and the Binder do not show an issuance date otherwise, Billings Clinic's allegations are sufficient to withstand Zurich's motion to dismiss.

### 2.  . *Bad Faith*

Next, Billings Clinic alleges that Defendants engaged in five separate prohibited unfair claim settlement practices under Montana's UTPA. (Doc. 1 at 5 (citing Mont. Code Ann. § 33-18-201(1), (4), (5), (6), (13))). Like its breach of contract argument, Zurich argues that it cannot be held statutorily liable under

13

Montana's UTPA because it was not an insurer to the Policy. (Doc. 12 at 6 (citing Mont. Code Ann. § 33-18-242 ("an insured 'has an independent cause of action *against an insurer* for actual damages *caused by the insurer's* violation of subsections (1), (4), (5), (6), (9), or (13).'")).

However, as discussed above, Billings Clinic noted numerous pages in the Policy and the Binder to show Zurich's identification as a contracting party and insurer. Zurich's name appears throughout the Binder as "Zurich, Company, us, we, our, Insurer." (Doc. 17 at 4–7 (citing Doc 12-1 at 347, 351, 352, 359, 382, 386)). Further, Zurich's copyright is printed on the Policy's pages, and the Policy directs Billings Clinic to Zurich if it needs "additional information or assistance in resolving a complaint about its insurance." (Doc. 17 at 6 (citing Doc. 12-1 at 6–9)). In short, Billings Clinic's claim is plausible because there are enough facts to reasonably infer that Zurich is liable provided the allegations in the Complaint and Zurich's identification within the Policy and the Binder.

Billings Clinic suggests that without more extrinsic evidence, a motion to dismiss is improper at this time. The Court agrees. Consequently, in construing the factual allegations in a light most favorable to Billings Clinic, the Court finds that Billings Clinic's allegations are sufficient to withstand Zurich's motion to dismiss.

14

## IV.    Conclusion

IT IS SO ORDERED that Defendant Zurich American Insurance Company's

Motion to Dismiss (Doc. 11) is DENIED.

DATED this 27th day of November, 2024.

SUSAN P. WATTERS
United States District Judge